UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HASSEN ALMAWERI,<br><br>Plaintiff,<br><br>v.<br><br>WALGREEN SPECIALTY PHARMACY, LLC,<br><br>Defendant. | Case No. 13-cv-04920-EDL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 43 |

Before the Court is Defendant's Motion for Summary Judgment in this employment discrimination matter. The Court held a hearing on Defendant's Motion on January 13, 2015. For the reasons stated at the hearing and in this Order, Defendant's Motion is granted in part and denied in part.

**Facts**

Defendant is a national retail pharmacy chain that had 8,091 stores nationwide as of May 3, 2013. Declaration of Gorman Moy ("Moy Decl.") at ¶ 2. Plaintiff is a former store manager for Defendant who was terminated from his employment on May 3, 2013. Id. ¶ 3. He is a 53-year-old Arab man. Declaration of Hassen Almaweri ("Almawari Decl.") ¶ 2.

Plaintiff's employment with Defendant began in 1989 and was at-will. Declaration of Rex Berry ("Berry Decl.") Ex. A at 58-59; Almaweri Decl. ¶ 2. Defendant's employment policy describes the employment relationship as follows:

> Employment with Walgreen Co. is for no definite period, and may be terminated at any time, with or without cause, at the option of Walgreen Co. or the employee, and with or without warning or notice by the Company. Further, no employee, Manager, or other agent or representative of Walgreen Co. other than its Chief Executive Officer, has authority to enter into any agreement for employment for any specified period of time, or to make any

agreement contrary to the foregoing.

Moy Decl. Ex. A. Defendant's Chief Executive Officer did not alter Plaintiff's at-will employment status. Berry Decl. Ex. A at 60. Further, Defendant's discipline policy states: "The progressive discipline policy is not a contract of employment between Walgreens' family of companies and any employee." Moy Decl. Ex. B.

In 1999, Plaintiff was promoted to store manager and was placed in charge of the East Oakland store (#3295). Almaweri Decl. ¶ 3. The East Oakland store was located in the Northern Region District called District 58, comprised of about thirty-five stores. Id.

During his employment as a store manager from 1999 through 2010, Plaintiff states that he met the expectations of his supervisors (Almaweri Decl. ¶ 4), but Defendant notes that Plaintiff received three warnings during that time for poor performance, which Plaintiff does not dispute. In January 2003, Plaintiff received a verbal warning from his supervisor, District Manager Gordon McAdams, for the poor condition of his store. Berry Decl. Ex. A at 61-64; A76. However, McAdams also stated that Plaintiff was the best fit for the East Oakland store, and that he was a "warrior" in the "toughest store in the district." Brunner Decl. Ex. A at 4-42, 125.

In March 2006, Plaintiff's supervisor, District Manager Keith Druyor, noted on Plaintiff's performance evaluation that his "store [is] usually a mess." Berry Decl. Ex. A at 68; A77-79. In May 2008, Druyor noted in Plaintiff's performance evaluation that his "store condition is rough." Berry Decl. Ex. A at 71; A80-84. Plaintiff does not complain of any discrimination or harassment by Druyor or McAdams. Berry Decl. Ex. A at 40-41.

In 2010, District Manager Gorman Moy replaced Druyor as Plaintiff's supervisor. Berry Decl. Ex. A at 77. Moy is responsible for the operation of stores within his district, ensuring that the stores operate in compliance with Defendant's corporate policies. Moy Decl. ¶ 21. He is not an officer or director of Defendant, and does not have authority over operations other than those in his district. Id. Moy does not establish corporate policy and does not exercise any discretion over decisions that ultimately determine Defendant's corporate policies. Id.

In August 2010, Moy gave Plaintiff a performance review that rated him as "meets expectations." Berry Decl. Ex. A at A88-90. This review contained both positive and negative

2

comments, including that Plaintiff "needs to be more involved" and "needs to keep a neater store." Id. Plaintiff signed off on this review, made no comments, and did not complain to anyone about this evaluation. Berry Decl. Ex. A at 91; A90.

In August 2011, Moy gave Plaintiff another performance review. Berry Decl. Ex. A at 98-100; A91-96. Moy noted, among other things, that Plaintiff "needs to develop a stronger sense of urgency to complete tasks on time" and that Plaintiff had "too many missed deadlines." Id. at A91-96. Further, Moy noted that the "store has too many basic and ad outs [i.e., store our of advertised items]. Staff isn't pulling stockroom and leading to a disorganized stockroom." Id. Plaintiff signed off on this review, made no comments, and did not complain to anyone about the review. Barry Decl. Ex. A at 98-100.

In February 2012, Moy gave Plaintiff a disciplinary warning for "gross misconduct" for being five minutes late to an all-day meeting at the district office, and because he was unable to attend another meeting due to lack of coverage at his store. Almaweri Decl. ¶ 27. Plaintiff states that he was five minutes late to the all-day meeting because his assistant store manager was stuck in traffic and Plaintiff could not leave his store for the meeting until she arrived. Id.

While Plaintiff was the store manager of the East Oakland store, Coretta Howard worked there as the head of the photo department. Declaration of Coretta Howard ("Howard Decl.") ¶¶ 2-3.[1] Howard states that when Moy became the district manager in 2010, he started visiting the East Oakland store more frequently, and "nit-picked whatever he could at the store." Id. ¶ 4. Howard stated that Plaintiff fixed all of Moy's complaints, but the "visits and nit-picking only increased." Id. Howard states that since Plaintiff was transferred to San Pablo, Moy only visited the East Oakland store two or three times in two years. Id.

Howard stated that Plaintiff worked very long hours and "devoted his life to Walgreens." Howard Decl. ¶ 5. Howard states that Plaintiff required all employees to be cross-trained in several positions within the store. Id. ¶ 6. Under Plaintiff's leadership, the East Oakland store

---

[1] In a footnote in the reply, Defendant objects to the Howard declaration as hearsay and opinion evidence. To the extent that Howard's declaration contains hearsay, the Court does not rely on these portions of it.

3

1  went from a disorganized store with a shop-lifting problem to being recognized as having the best
2  cash handling, best photo department and the best pharmacy in the district.  Id. ¶¶ 7-8.  Howard
3  states that Plaintiff was so effective in bringing down the "shrink rate," that on more than one
4  occasion, loss prevention executives from corporate headquarters visited the store to learn how it
5  was possible to have such a low shrink rate in such an economically depressed area.  Id. ¶ 8.

6  Howard also states that in 2011 and 2012, Moy and Alonso repeatedly told Plaintiff that he
7  was too old to be a store manager and suggested that he retire.  Howard Decl. ¶ 9.  Also during
8  that time, Howard heard Moy tell Plaintiff that he could not understand Plaintiff's accent and
9  asked him to repeat himself.  Id. ¶ 10.  Howard states that this stood out to her because Moy's tone
10 was condescending and because she never had trouble understanding Plaintiff.  Id.

11 In April 2012, Moy transferred Plaintiff from the older store in East Oakland to the newest
12 store in the area in San Pablo.  Moy Decl. ¶ 7.  Moy decided to transfer Plaintiff "in order to give
13 him a fresh start at a newer store, and to help him address some of his performance issues."  Id.
14 Plaintiff states that the transfer was not a promotion.  Almaweri Decl. ¶ 9.  Although Defendant
15 characterizes his deposition testimony as showing that he welcomed the promotion, instead,
16 Plaintiff testified at his deposition that: "I been requesting throughout my evaluation through all
17 the DMs I like to be transferred, I like to have a better store, and a higher store, not the lower
18 store; not lower volume, higher volume."  Brunner Decl. Ex. A at 125.  Howard states that the
19 transfer was very quick and the transition to a new store manager in East Oakland was rough.
20 Howard Decl. ¶ 11.  She states that a few weeks after the transfer, she called Market Vice-
21 President Bill Hose to talk about the transfer, and had to leave a message.  Howard Decl. ¶ 18.
22 Howard's new store manager pressured Howard to stop complaining about Plaintiff's transfer.  Id.
23 Others complained about the transfer as well, and Hose held a meeting with store employees.  Id. ¶
24 20.

25 Plaintiff states that after he was transferred to San Pablo, a store with less sales volume and
26 ranked much lower than the East Oakland store, Defendant's employees made ageist and racist
27 comments to him.  Almaweri Decl. ¶¶ 5-7.  Moy told Plaintiff that he was too old to do his job, did
28 not comprehend things, was too old to compete, was too old to perform his duties as a manager,

4

and that he would not "make it" in the new Walgreen's era. Almaweri Decl. ¶ 5. Moy also told Plaintiff that he preferred to give opportunities to "rookies" who would do better and learn faster than Plaintiff. Id. Moy also told Plaintiff that Plaintiff was "stuck in his ways." Id. In his declaration, Plaintiff states that Moy frequently ridiculed Plaintiff in public, saying that his accent was too difficult to understand. Id. ¶ 6. Moy testified that he never told Plaintiff that his accent was difficult to understand. Brunner Decl. Ex. B at 133. In 2013, Plaintiff states that Emilio Alonso, Defendant's Community Leader for the geographic area, told Plaintiff that he should resign and do work at 7-Eleven with his "kind of people." Id. ¶ 7.

After Plaintiff was transferred in April 2012, over 300 community members and customers signed a petition to have him returned to the East Oakland store. Almaweri Decl. ¶ 10; Howard Decl. ¶ 15. Plaintiff had no knowledge of the petition before it was sent to Defendant. Almaweri Decl. ¶ 10. According to Plaintiff, Moy accused Plaintiff of orchestrating the petition. Id.

In September 2012, Moy gave Plaintiff a performance review in which he rated Plaintiff as "partially achieving expectations." Barry Decl. Ex. A at 101-117. Plaintiff signed off on the review, made no comments, and did not complain about the review. Berry Decl. Ex. A at 141, 146. Plaintiff states that during this time, Moy gave Plaintiff lower scores in subjective areas than his peers in the same categories, while making similar comments on the performance reviews. Brunner Decl. Ex. B at 162 at Ex. 27; Seigel Decl. Ex. A at 11-13 at Exs. 60-62. For example, Plaintiff claims that on his review, Moy gave him a two out of five score in the area of "Develops Others," but gave other store managers a higher score. The comment on Plaintiff's performance evaluation was: "Needs to cross train employees and hold them accountable. When is the last time you wrote someone up or promoted someone? Focus on teaching the members of management while they are at your store." Berry Decl. Ex. 8 at A91-96. Other store managers receiving higher scores had different comments such as: "Elizabeth has promoted two employees to management over the past year" and "Done a nice job in training new employees at his previous store. Is working on transitioning to same style at new store." Siegel Decl. Ex. A at Ex. 16, 62.

In March 2012, Moy issued a written warning to Plaintiff for gross misconduct by failing to attend to scheduled meeting with Moy. Berry Decl. Ex. A at A97-98. In August 2012, Plaintiff

5

was not present in his store for a scheduled supervisory meeting with Moy. Berry Decl. Ex. A at A99-100. Plaintiff states in his declaration that Moy's visit was not scheduled. Almaweri Decl. ¶ 12. Plaintiff does not deny that he was not present for the unscheduled 8:00 a.m. visit, but states that it was because he started his shift at 9:00 a.m. that day so there would be managerial coverage in the store later in the day. Id. Plaintiff states that Moy later told Plaintiff that he agreed with this managerial scheduling decision. Id.

Plaintiff states that when he was a manager in East Oakland, the Community Leader would only visit his store once per month, and he did not write up notes of his meeting. Almaweri Decl. ¶ 13. But when Plaintiff was transferred to San Pablo, the Community Leader Alonso came to the store almost every day, wrote up his notes and shared them with Moy. Id.

In October 2012, Moy placed Plaintiff on a performance improvement plan ("PIP") and issued him a written warning based on his continued poor performance. Moy Decl. ¶ 8; Berry Decl. Ex. A at A118-135; Almaweri Decl. ¶ 14. Plaintiff was given several areas in which to improve. Berry Decl. Ex. A at A118-135. The PIP stated that if performance standards were not met, Plaintiff could be subject to further discipline, including suspension. Barry Decl. Ex A at A121. During this time, Alonso made weekly visits to Plaintiff's store as part of the effort to help Plaintiff succeed. Declaration of Emilio Alonso ("Alonso Decl.") ¶ 2. As a Community Leader, Alonso's role was to be a resource and mentor for other store managers within his assigned Community of six to eight stores, to provide guidance and assistance to them and to help them operate in compliance with Defendant's policies and procedures. Alonso Decl. ¶ 2. Alonso did not manage or supervise other store managers, nor did he prepare performance reviews for store managers or have the authority to terminate or discipline store managers. Alonso Decl. ¶ 2.

In January 2013, Moy determined that Plaintiff's performance had improved, so that the PIP could be closed. Moy Decl. ¶ 9; Almaweri Decl. ¶ 14. Plaintiff was advised that if he did not sustain the improvement, the PIP could be reinstated. Id.

Shortly after the PIP was closed, Moy observed, based on personal visits to Plaintiff's store, that Plaintiff's performance again began to deteriorate. Moy Decl. ¶ 10. Rather than terminate Plaintiff, Moy reopened the PIP in March 2013 and issued a final written warning to

Plaintiff. Id. According to Plaintiff, Moy told Plaintiff at that time that there was an 85% chance that Plaintiff was not going to "make it." Almaweri Decl. ¶ 16. Plaintiff notes that the reopened PIP included a requirement that Plaintiff "improve sales and customer service" even though his store ranked among the highest in the district in many objective areas. Almaweri Decl. ¶ 16. For example, in an April 2013 report showing the ranking of all stores in the district for suggestive selling, that is the number of items sold by suggestive selling, Plaintiff's store ranked fourth out of thirty-three stores. Almaweri Decl. ¶ 17; Brunner Decl. Ex. B at Ex. 47. Plaintiff's store also showed a 29.1% sales increase during the March and April 2013 time period, which was tied with fourth out of thirty-three stores in the district. Almaweri Decl. ¶ 19; Brunner Decl. Ex. B at Ex. 50. Further, Plaintiff's store ranked fifth out of thirty-three stores in gross profit increase for the week ending March 30, 2013. Almaweri Decl. ¶ 20; Brunner Decl. Ex. B at Ex. 50. In a report dated April 13, 2013, Plaintiff's store had a sales increase of 12.3%, making it third in the district and a gross profit increase of 6.8%, making it ninth in the district. Almaweri Decl ¶ 21; Brunner Decl. Ex. B at Ex. 50. Sixteen stores had a sales decrease in that period. Id. On a report dated April 18, 2013 showing "basic outs" (basic merchandise that all of Defendant's stores should have in stock), Plaintiff's store ranked sixth out of thirty-three stores. Id. ¶ 22; Brunner Decl. Ex. B at Ex. 48. In addition, according to Plaintiff, Moy told Plaintiff that he included the requirement about sales and customer service in the PIP in part because he found Easter signage in the store after the season. Almaweri Decl. ¶ 16. But Plaintiff states that the PIP was reopened weeks before Easter. Id.

During two subsequent visits to Plaintiff's store on March 30, 2013 and April 5, 2013, Moy found that the store's condition was poor. Moy Decl. ¶ 11. For example, Moy found Valentine's Day promotions still on display. Id. Plaintiff does not dispute that Moy talked to him about these issues. Berry Decl. Ex. A at 179-187.

On April 22, 2013, Moy requested that Plaintiff attend a meeting at the District Office to discuss his performance and reinstatement of the PIP. Moy Decl. ¶ 12. Also present were two other employees, Community Leader Alonso and Operations Trainer Jennifer Johnson. Id. During that meeting, Moy states that Plaintiff was hostile to Moy, and blamed others for his

7

performance problems and the poor condition of his store. Moy Decl. ¶ 12; Ex. C, D; Alonso Decl. ¶ 3; Ex. A. Plaintiff states that he was prepared to review all the completed tasks from the PIP in a binder that he had created. Almaweri Decl. ¶ 23. Plaintiff states that Moy did not review the action steps listed on the PIP and instead told Plaintiff that he was "worth nothing." Id. Plaintiff contends that had Moy asked him about his action steps, he would have shown him the project binder, but that Moy did not ask him for it. Id. At the end of the meeting, Plaintiff asked Moy to review the binder, but Moy refused. Id. Plaintiff said that his tone at this meeting changed because he was "responding to years of escalating discrimination and harassment, and Moy's refusal to review the tasks assigned in the PIP, which was the purpose of the meeting." Almaweri Decl. ¶ 24.

Thereafter, Moy made the decision to terminate Plaintiff's employment. Moy Decl. ¶ 13. On May 3, 2013, Moy informed Plaintiff that he was terminated. Moy Decl. ¶ 13. Moy discussed the decision to terminate Plaintiff with his supervisor, Market Vice-President Bill Hose, and with representatives of Defendant's Employee Relations Department. Moy Decl. ¶ 22. Hose is not an officer or director of Defendant and is only responsible for the operation of stores within the area to which he is assigned and to ensure that those stores operate in compliance with Defendant's corporate policies. Hose Decl. ¶ 2. Moy was not required to obtain any approval from Hose to terminate Plaintiff. Moy Decl. ¶ 22. Plaintiff states that he was the only Arab store manager under Moy's supervision at the time. Almaweri Decl. ¶ 25.

Defendant contends that the May 3, 2013 meeting in which Plaintiff was terminated was the first time that Plaintiff complained that he was subject to discrimination based on his national origin (Arab) and his age. Berry Decl. Ex. A at 45-46; 235-236. Defendant initiated an investigation after Plaintiff's termination, but Plaintiff did not return calls from Defendant. Berry Decl. Ex. A at 238-239. Plaintiff states in his declaration that he complained of discrimination and harassment before Defendant terminated his employment. Almaweri Decl. ¶ 26. Plaintiff called Hose in mid-April 2013 and emailed him one week later, requesting a phone call. Id. Hose called Plaintiff on April 22, 2013, and Plaintiff informed him that Moy was harassing him and discriminating against him. Id. Plaintiff states that Hose told Plaintiff that he would take care of

1    it, but did not do so.  Id.

2            Moy stated that he did not consider Plaintiff's age or national origin in making any
3    employment decision.  Moy Decl. ¶ 14.  Moy supervises a culturally diverse district including
4    store managers of numerous ethnic backgrounds ranging in age from mid-30s up to age 70.  Moy
5    Decl. ¶ 14.  Moy noted that in 2013, he promoted another store manager of Middle Eastern
6    descent.  Moy Decl. ¶ 16.   Plaintiff, however, states in his declaration that this store manager,
7    Rizwan Azam, is actually Indian, and not of Middle Eastern descent.  Almaweri Decl. ¶ 8.
8    Defendant notes, however, that there is no evidence that Moy did not believe that Azam was of
9    Middle Eastern descent.

10           Also, it is undisputed that Moy stated that when Plaintiff was terminated, there were seven
11   store managers in the district who were older than Plaintiff, and since Plaintiff's termination, Moy
12   has promoted another employee who is older than Plaintiff.  Moy Decl. ¶ 17.  Moy stated that he
13   has disciplined and terminated store managers of various ethnic backgrounds, both younger and
14   older than Plaintiff, for performance issues.  Moy Decl. ¶ 18.

15           Moy pointed out that the performance reviews of Plaintiff contain both positive and
16   negative comments, and that Moy approved Plaintiff's transfer to a newer store in order to give
17   Plaintiff a fresh start.  Moy Decl. ¶ 15.  Moy stated that even though he put Plaintiff on a PIP, he
18   closed it when Plaintiff's performance improved, and only reopened it when Plaintiff's
19   performance began to slip, rather than terminating Plaintiff right away.  Moy Decl. ¶ 15.  Moy
20   stated that he never made any derogatory remarks to anyone about Plaintiff's age or national
21   origin.  Moy Decl. ¶ 19.

22           Defendant maintains extensive policies and procedures prohibiting workplace
23   discrimination, harassment or retaliation on any basis, including national origin and age.  Moy
24   Decl. ¶ 4.  Defendant also maintains easily accessible complaint procedures, including an Open
25   Door Policy and a Confidential Hotline.  Moy Decl. ¶ 4.  Defendant regularly provides training to
26   employees on company policies and on state and federal laws regarding discrimination,
27   harassment and retaliation.  Moy Decl. ¶ 4.  During his employment, Plaintiff received training on
28   Defendant's policies against discrimination and harassment, and he understood the complaint

9

mechanisms that were available to him.  Berry Decl. Ex. A at 43-44.

**Legal Standard**

Summary judgment shall be granted if "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Pro. 56(c).  Material facts are those which may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.  The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The court must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial.  Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.  Id.  If the moving party meets its initial burden, the opposing party "may not rely merely on allegations or denials in its own pleading;" rather, it must set forth "specific facts showing a genuine issue for trial."  See Fed. R. Civ. P. 56(e)(2); Anderson, 477 U.S. at 250.  If the nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment as a matter of law."  Celotex, 477 U.S. at 323.

**Discussion**

**1.    Summary adjudication is denied as to Plaintiff's first claim for discrimination.**

Plaintiff's first claim for relief alleges that Defendant violated California's Fair

Employment and Housing Act, Government Code §§ 12940, et seq., by discriminating against him based on his national origin and age.

Motions for summary judgment in employment discrimination actions are analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., Chuang v. University of California Davis, 225 F.3d 1115, 1123-24 (9th Cir. 2000) (citing McDonnell Douglas); Guz v. Bechtel, 24 Cal.4th 317, 380 (2000) ("In disparate treatment cases, California courts apply the test that the United States Supreme Court articulated in McDonnell Douglas Corp. v. Green (1973) 411 U.S. 792, 802–803, 93 S.Ct. 1817, 36 L.Ed.2d 668 (McDonnell Douglas) to assess such cases when brought under federal law."). A plaintiff alleging disparate treatment must first establish a triable issue of fact as to a prima facie case of discrimination by showing that: (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably. See id. The proof necessary for a plaintiff to establish a prima facie case is "minimal" and need not even rise to the level of a preponderance of the evidence. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (citing Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994)). The plaintiff need only offer evidence that "gives rise to an inference of unlawful discrimination," arising either under the McDonnell Douglas presumption or by more direct evidence of discriminatory intent. Wallis, 26 F.3d at 889.

Once a plaintiff has sufficiently shown a prima facie case of discrimination, the defendant is entitled to come forward with a legitimate, nondiscriminatory reason for the adverse employment action. See Reeves, 530 U.S. at 142 (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)). The defendant's burden at this stage is one of production, not persuasion. The court may not make a credibility assessment. See Reeves, 530 U.S. at 142 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).

If the defendant offers admissible evidence of a legitimate, nondiscriminatory reason for the claimed adverse action, the McDonnell Douglas framework and its presumption of discrimination disappears, and the plaintiff is left to prove by a preponderance of the evidence that

11

the reasons offered by the defendant are merely a pretext for discrimination. See Reeves, 530 U.S. at 143 (citations omitted); Chuang, 225 F.3d at 1124 (the plaintiff must show that the articulated reason is pretextual, "'either directly by persuading a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'") (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981)); Dominguez-Curry v. Nevada Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005). The ultimate burden of persuading the trier of fact that the employer intentionally discriminated remains at all times with the plaintiff. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (citing Burdine, 450 U.S. at 253); see also Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir. 1998) ("In those cases where direct evidence is unavailable, however, the plaintiff may come forward with circumstantial evidence that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable. Such evidence of 'pretense' must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate on the basis of sex.").

### A.  Prima facie case

Defendant argues that Plaintiff cannot make a prima facie showing that he was competently performing his job, that is, that he was qualified for his position. Defendant notes that Plaintiff received counseling and discipline for poor performance, including the poor condition of his store, dating back to 2003, long before he started reporting to Moy. When Moy became Plaintiff's supervisor, Plaintiff continued to receive poor performance evaluations, including notations that he missed deadlines and had no sense of urgency. Moy also noted that Plaintiff's store was in a poor condition. Moy eventually put Plaintiff on a PIP, which was closed, but later reopened because Plaintiff's performance declined. Thus, Defendant argues that Plaintiff cannot establish a prima facie case of discrimination.

The requirements of a prima facie case, however, are minimal. Plaintiff has provided evidence that his San Pablo store was performing within at least the top ten of the stores in the district with respect to objective criteria such as sales and gross profits. Further, before Plaintiff arrived at the East Oakland store, it was disorganized, had low profits and had a shop-lifting

12

1   problem. Howard Decl. ¶ 8. McAdams called Plaintiff a "warrior" in the "toughest store in the
2   district." McAdams also said that Plaintiff was the best fit for that store. When Moy reopened the
3   PIP in March 2013, Plaintiff's store ranked fourth out of the thirty-three stores in Moy's district in
4   the areas of sales and customer service. Although Plaintiff did not raise any issues of
5   discrimination at the time that the performance reviews were given to him, and those reviews
6   listed problems such as missed deadlines, lack of sense of urgency, and having to be "chased
7   down" for compliance on work issues (Berry Decl. Ex. A at A88-96, A101-117), Plaintiff testified
8   that he did not complain because he was "trying to build a new relationship with the [District
9   Manager]." Berry Decl. Ex. A at 91. Thus, Plaintiff has met the low threshold of showing a
10  triable issue of fact as to whether Plaintiff was performing competently in his position.

**B.      Legitimate, nondiscriminatory reason**

"A reason is 'legitimate' if it is 'facially unrelated to prohibited bias, and which if true, would thus preclude a finding of discrimination.'" Washington v. California City Correction Center, 871 F. Supp. 2d 1010, 1026 (E.D. Cal. 2012) (internal citation omitted). Here, Defendant has established a legitimate, non-discriminatory reason for terminating Plaintiff. According to Defendant, Plaintiff was performing poorly and was unable to improve despite many chances given by Moy. Defendant also notes that Plaintiff was reportedly hostile and combative during the April 22, 2013 meeting with Moy and others. Defendant has met its burden of showing a triable issue of fact as to whether there was legitimate and non-discriminatory reason for terminating Plaintiff.

**C.      Pretext**

A showing that the legitimate reason proffered by the employer is pretextual must be supported by "specific, substantial evidence." Steckl v. Motorola, 703 F.2d 392, 393 (9th Cir. 1983). "A plaintiff may demonstrate pretext in either of two ways: (1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." Washington, 871 F. Supp. 2d at 1026. A plaintiff may not "create a genuine issue of material fact by relying solely on the plaintiff's subjective belief that

13

the challenged employment action was unnecessary or unwarranted." Cornwall v. Electra Cent. Credit Union, 438 F.3d 1018, 1029 n.6 (9th Cir. 2006).

Here, Plaintiff has met his burden of raising a triable issue of fact regarding pretext, and does not rely merely on a subjective argument of fairness. First, there is a disputed issue of fact as to whether Moy made racist and ageist comment to and about Plaintiff. Plaintiff testified that after he was transferred to the San Pablo store, Moy commented that Plaintiff was "too old to do his job," "did not comprehend things," was "too old to compete," was "too old to perform his duties" as a manager, that he would not "make it in the new Walgreens era," that Moy "preferred to give opportunities to rookies," and that "rookies could do better and learn faster" than Plaintiff. Almaweri Decl. ¶ 5. Plaintiff also testified that Moy "frequently ridiculed" Plaintiff in public, saying that his accent was too difficult to understand. Almaweri Decl. ¶ 6. Alonso reportedly told Plaintiff in 2013 to go work at "7-Eleven" with his "kind of people," and while he was not Plaintiff's supervisor, he was the Community Leader for Plaintiff's store and visited Plaintiff's store almost every day, writing up his notes and sharing them with Moy. Almaweri Decl. ¶ 7. Moy and Alonso deny making these racist and ageist statements. Although Defendant argues that these remarks were too remote in time to constitute any inference of discriminatory animus (see Martin v. Genesco, Inc., 2008 WL 4816455, at * (E.D. Cal. Nov. 5, 2008) (comments made one year before the termination, among other things, did not show pretext), these remarks were allegedly made in the time after Plaintiff was transferred to the new store and through 2013 when he was terminated.

Plaintiff has also provided other facts to support a triable issue of fact as to pretext. Defendant does not dispute that Moy replaced Plaintiff with a younger, non-Arab woman, which Plaintiff claims is further evidence of Defendant's discriminatory intent. Further, Plaintiff states that he was the only Arab employee to be terminated. While Plaintiff also states that Moy did not promote another Arab employee and that Azam was Indian, not Middle Eastern, he has no evidence that Moy knew that the promoted employee was actually Indian and not Middle Eastern. Also, objective criteria show that the San Pablo store was performing in a number of ways near the top of the district's thirty-three stores under Plaintiff's leadership. Plaintiff's lowest scores on

14

his performance evaluations are in subjective criteria, which is relevant to the pretext issue. See Atonio v. Wards Cove Packing Co., 810 F.2d 1477, 1481 (9th Cir. 1987) (". . . we have stated that subjective practices are particularly susceptible to discriminatory abuse and should be closely scrutinized.").

Plaintiff has raised a triable issue of fact as to his prima facie case and as to pretext. Therefore, Defendant's Motion for Summary Adjudication as to Plaintiff's discrimination claim is denied.

**2.    Summary adjudication is granted as to Plaintiff's first claim for harassment.**

To prevail on his harassment claims, Plaintiff must show that: (1) he was subjected to verbal or physical conduct because of his membership in a protected class; (2) the conduct was "unwelcome"; and (3) "the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." Kang v. U. Lim America, Inc., 296 F.3d 810, 817 (9th Cir.2002) (citing Gregory v. Widnall, 153 F.3d 1071, 1074 (9th Cir.1998)). An "employee claiming harassment based upon a hostile work environment must demonstrate that the conduct complained of was *severe enough or sufficiently pervasive* to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees." Lyle v. Warner Bros. Television Prods., 38 Cal.4th 264, 279 (2006) (emphasis in original); see also Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). At the hearing, Plaintiff stated that he was not pursuing a harassment claim based on national origin or age. Thus, Defendant's Motion for Summary Adjudication as to Plaintiff's harassment claim is granted.

**3.    Summary adjudication is granted as to Plaintiff's second claim for breach of employment contract.**

In his opposition, Plaintiff concedes that it is undisputed that he was an at will employee with no employment contract, so there can be no breach of employment contract claim. Summary adjudication is granted as to this claim.

**4.    Summary adjudication is denied as to Plaintiff's third claim for failure to prevent discrimination and harassment**

Under California law, an employer may violate California law by failing to "take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't

15

1  Code § 12940(k). "When a plaintiff seeks to recover damages based on a claim of failure to
2  prevent discrimination or harassment she must show three essential elements: 1) plaintiff was
3  subjected to discrimination, harassment or retaliation; 2) defendant failed to take all reasonable
4  steps to prevent discrimination, harassment or retaliation; and 3) this failure caused plaintiff to
5  suffer injury, damage, loss or harm." Lelaind v. City & County of San Francisco, 576 F. Supp. 2d
6  1079, 1103 (N.D. Cal. 2008).

7  As described above, there is a triable issue of fact as to discrimination. Further, Plaintiff
8  has raised a triable issue of fact that Defendant failed to take all reasonable steps to prevent
9  discrimination. Plaintiff states in his declaration that he called Hose in mid-April 2013 and finally
10 talked to him on April 22, 2013, prior to his termination. Almaweri Decl. ¶ 26. Plaintiff states
11 that he told Hose that Moy was harassing him and discriminating against him based on his race
12 and national origin, and that Hose promised to take care of it, but did not. Id. Although
13 Defendant argues that Plaintiff's deposition is to the contrary so his declaration should be ignored
14 as a sham (see, e.g., Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012)), Plaintiff's deposition
15 is consistent with his declaration. Defendant only points to his deposition testimony that he did
16 not call the 1-800 employee assistance number before he was terminated, but only on the date of
17 his termination. Berry Decl. Ex. A at 45-46. However, Plaintiff also testified that he called
18 someone else prior to his termination to complain about discrimination and harassment. Berry
19 Decl. Ex. A at 46. Plaintiff was not asked in his deposition, nor did he testify, as to whether he
20 complained to Hose or anyone else prior to his termination. Thus, because Plaintiff has created a
21 triable issue of fact as to this claim, summary adjudication is denied.

22 **5.     Summary adjudication is granted as to Plaintiff's claim for punitive damages.**

23 To prevail on a claim for punitive damages, a plaintiff must establish "oppression, fraud or
24 malice" and that the conduct at issue was performed or ratified by an "officer, director or
25 managing agent" by clear and convincing evidence. Barton v. Alexander Hamilton Life Ins. Co.
26 of Amer., 110 Cal.App.4th 1640, 1644 (2003). "The clear and convincing standard requires a
27 finding of high probability ... so clear as to leave no substantial doubt; sufficiently strong to
28 command the unhesitating assent of every reasonable mind." Scott v. Phoenix Schools, Inc., 175

1  Cal.App.4th 702, 715 (2009) (internal quotation marks omitted).  "If the plaintiff is going to
2  prevail on a punitive damages claim, he or she can only do so by establishing malice, oppression
3  or fraud by clear and convincing evidence.  Thus, any evidence submitted in response to a motion
4  for summary adjudication must necessarily meet that standard."  Basich v. Allstate Ins. Co., 87
5  Cal.App.4th 1112, 1118–19 (2001).  California Civil Code section 3294 "permits punitive
6  damages against a corporate employer if the employee is sufficiently high in the corporation's
7  decision-making hierarchy to be an 'officer, director or managing agent.'"  Gelfo v. Lockheed
8  Martin Corp., 140 Cal.App.4th 34, 63 (2006) citing White v. Ultramar, Inc., 21 Cal.4th 563, 572
9  (1999).  "'Managing agents' are employees who 'exercise [ ] substantial discretionary authority
10  over decisions that ultimately determine corporate policy.'"  Cruz v. HomeBase, 83 Cal.App.4th
11  160, 167 (2000) (internal citations and italics omitted). "In order to demonstrate that an employee
12  is a true managing agent under section 3294, subdivision (b), a plaintiff seeking punitive damages
13  would have to show that the employee exercised substantial discretionary authority over
14  significant aspects of a corporation's business." White, 21 Cal.4th at 577.
15    Defendant argues that Moy is not a corporate officer of Defendant, nor he is a member of
16  the Board of Directors.  Defendant argues that there is no evidence that he was acting as a
17  managing agent when he terminated Plaintiff.  Moy is a district manager who is responsible solely
18  for the 33 stores within his district, which represents 0.41% of the 8,091 stores nationwide.  Moy
19  Decl. ¶ 21.  Moy's authority is to ensure that his stores operate within the corporate policies,
20  which he does not establish.  Id.  Moy does not exercise substantial discretion over decisions that
21  ultimately determine Defendant's corporate policies.  Id.; see also Roby v. McKesson Corp., 47
22  Cal.4th 686, 714 (2009) ("When we spoke in White about persons having 'discretionary authority
23  over ... corporate policy,' we were referring to formal policies that affect a substantial portion of
24  the company and that are the type likely to come to the attention of corporate leadership. It is this
25  sort of broad authority that justifies punishing an entire company for an otherwise isolated act of
26  oppression, fraud, or malice.") (internal citation omitted).
27    Plaintiff does not provide evidence to dispute these facts.  Instead, Plaintiff argues that
28  there is a triable issue of fact as to whether Moy acted as a managing agent, relying in White v.

17

Ultramar, Inc., 21 Cal.4th 563 (1999).  In White, the court concluded that the manager who fired the plaintiff was a managing agent:

> As the zone manager for Ultramar, Salla was responsible for managing eight stores, including two stores in the San Diego area, and at least sixty-five employees. The individual store managers reported to her, and Salla reported to department heads in the corporation's retail management department.
>
> The supervision of eight retail stores and sixty-five employees is a significant aspect of Ultramar's business. The testimony of Salla's superiors establishes that they delegated most, if not all, of the responsibility for running these stores to her. The fact that Salla spoke with other employees and consulted the human resources department before firing plaintiff does not detract from her admitted ability to act independently of those sources. In sum, Salla exercised substantial discretionary authority over vital aspects of Ultramar's business that included managing numerous stores on a daily basis and making significant decisions affecting both store and company policy. In firing White for testifying at an unemployment hearing, Salla exercised substantial discretionary authority over decisions that ultimately determined corporate policy in a most crucial aspect of Ultramar's business.

White, 21 Cal.4th at 577.  This case is not substantially similar to White.  In White, the decision was based on part on the fact that the supervisor was responsible for a "significant aspect" of the defendant's business.  Plaintiff has not met his burden of showing by clear and convincing evidence that Moy was responsible for a significant aspect of Defendant's business.  Also, Plaintiff has not presented evidence that Moy made "significant decisions affecting both store and company policy."  Because Plaintiff has not met his burden of raising a triable issue of fact as to whether Moy is a managing agent of Defendant, and has not established by clear and convincing evidence that Defendant engaged in conduct amounting to oppression, fraud or malice (Cal. Civ. Code § 3294(b)), Defendant's Motion for Summary Adjudication as to punitive damages is granted.

**Conclusion**

Accordingly, Defendant's Motion for Summary Judgment is granted in part and denied in part.

**IT IS SO ORDERED**.

Dated: January 26, 2015

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge

United States District Court
Northern District of California